THE STATE OF OHIO, APPELLANT, *v.* JONES, APPELLEE.

THE STATE OF OHIO, APPELLANT, *v.* SKROPITS, APPELLEE.

[Cite as *State v. Jones,* 121 Ohio St.3d 103, 2009-Ohio-316.]

104

(Nos. 2007–2310 and 2007–2311—Submitted October 14, 2008—Decided February 4, 2009.)

O'CONNOR, J.

{¶ 1} Today we determine whether an officer's extraterritorial traffic stop in contravention of R.C. 2935.03 also violates the Fourth Amendment to the United States Constitution, when the officer has probable cause to initiate the stop because he personally observed a traffic violation. For the reasons that follow, we hold that it does not.

### Relevant Background

{¶ 2} On the night of September 27, 2006, Sergeant Mitchell Hershberger of the East Canton Police Department responded to an accident at 113 East Nassau Street in East Canton. A witness told Sergeant Hershberger that a red Ford Ranger had collided with a full-size van. The drivers had exchanged words and afterwards left the scene, with the Ford heading west on Nassau Street.

{¶ 3} Sergeant Hershberger noticed some debris left behind from the Ford. Approximately ten minutes later, he received another dispatch advising him that the Ford was hiding in the area of the former Coyote Restaurant, located about a half mile from East Canton. Hershberger went to the restaurant but did not find the Ford. Believing that the vehicle could be headed towards Canton, Sergeant Hershberger next drove out to Trump Road, about another half mile away.

{¶ 4} When Sergeant Hershberger arrived at Trump Road, he began heading back east, checking various businesses for the Ford. While he was checking a car wash, a motorist told Sergeant Hershberger that a vehicle heading west without any headlights almost hit him.

{¶ 5} Sergeant Hershberger got back on the road, continuing to go east towards East Canton, and eventually saw the Ford. Upon finding the truck, he observed that its front end was smashed and its headlights were not on. Sergeant Hershberger stopped the Ford, which appellee Adam Jones was driving, because the vehicle did not have its headlights on.

{¶ 6} After he had pulled over the vehicle, Sergeant Hershberger asked Jones and his passenger, appellee Shawn Skropits, whether they had any weapons in the truck, and appellees said that they did. In addition, Jones told Sergeant Hershberger that he did not have a driver's license, which was why he had left the accident scene.

{¶ 7} Sergeant Hershberger arrested appellees and charged each of them with one count of carrying a concealed weapon and one count of unlawful possession of dangerous ordnance. Appellees moved to suppress the evidence obtained during the search, arguing that because the stop violated R.C. 2935.03, which governs the territorial jurisdiction in which a police officer may make an arrest, it also violated the Fourth Amendment. After a hearing on the motion, the trial court denied appellees' requests.

{¶ 8} Following the denial of their motions to suppress, appellees pleaded no contest to the charges, were found guilty by the trial court, and were sentenced to community control.

{¶ 9} Appellees appealed the trial court's judgment to the Fifth District Court of Appeals. The court of appeals reversed in a divided opinion, holding that there was neither reasonable suspicion nor probable cause to support Sergeant Hershberger's stop. The dissent, however, would have affirmed the trial court's denial of the motion to suppress based on *State v. Weideman* (2002), 94 Ohio St.3d 501, 764 N.E.2d 997.

{¶ 10} The state appealed the reversals, and we exercised jurisdiction and consolidated the cases. *State v. Skropits,* 117 Ohio St.3d 1450, 2008-Ohio-1427, 883 N.E.2d 1075 (cause consolidated); *State v. Jones,* 117 Ohio St.3d 1438, 2008-Ohio-1279, 883 N.E.2d 456 (appeal accepted and cause consolidated); *State v. Skropits,* 117 Ohio St.3d 1423, 2008-Ohio-969, 882 N.E.2d 444 (appeal accepted).

## Analysis

{¶ 11} Our decision in *Weideman* and the United States Supreme Court's recent decision in *Virginia v. Moore* (2008), —— U.S. ——, 128 S.Ct. 1598, 170 L.Ed.2d 559, are dispositive of this matter. Read together, *Weideman* and *Moore* stand for the principle that a law-enforcement officer who personally observes a traffic violation while outside the officer's statutory territorial jurisdiction has probable cause to make a traffic stop; the stop is not unreasonable under the Fourth Amendment to the United States Constitution. *Moore,* —— U.S. at

——, 128 S.Ct. at 1604, 170 L.Ed.2d 559; *Weideman,* 94 Ohio St.3d 501, 764 N.E.2d 997, syllabus.

{¶ 12} We held in *Weideman* that "[w]here a law enforcement officer, acting outside the officer's statutory territorial jurisdiction, stops and detains a motorist for an offense committed and observed outside the officer's jurisdiction, the seizure of the motorist by the officer is not unreasonable *per se* under the Fourth Amendment." 94 Ohio St.3d 501, 764 N.E.2d 997, syllabus.

{¶ 13} The facts of *Weideman* closely mirror those of the present case. In *Weideman,* a police officer outside of his jurisdiction stopped a vehicle that he had observed traveling left of center. Id. at 502, 764 N.E.2d 997. The trial court denied Weideman's motion to suppress, but the court of appeals reversed, reasoning that because the officer had been outside of his jurisdiction, the arrest was unlawful under R.C. 2935.03(A)(1) and per se unreasonable under the Fourth Amendment. Id. at 503, 764 N.E.2d 997.

{¶ 14} We reversed the appellate court's judgment. Specifically, we held that "[t]he state's interest in protecting the public from a person who drives an automobile in a manner that endangers other drivers outweighs [the defendant's] right to drive unhindered." *Weideman,* 94 Ohio St.3d at 506, 764 N.E.2d 997. But because the stop was not per se unreasonable, it follows that a court could find that an extraterritorial stop is unreasonable based on the unique facts and circumstances of a particular case.[1]

{¶ 15} The United States Supreme Court's decision in *Moore,* however, removed any room for finding that a violation of a state statute, such as R.C. 2935.03, in and of itself, could give rise to a Fourth Amendment violation and result in the suppression of evidence.[2] Officers stopped and arrested Moore for driving on a suspended license. *Moore,* —— U.S. at ——, 128 S.Ct. at 1604, 170 L.Ed.2d 559. Under Virginia law, the officers should have issued Moore a summons rather than arresting him because driving on a suspended license was generally not an arrestable offense. Id. at ——, 128 S.Ct. at 1602, 170 L.Ed.2d 559. Following Moore's arrest, the officers found 16 grams of crack cocaine and $516 on his person. Id. at ——, 128 S.Ct. at 1601, 170 L.Ed.2d 559.

{¶ 16} Moore moved to suppress the evidence on Fourth Amendment grounds. Id. at ——, 128 S.Ct. at 1602, 170 L.Ed.2d 559. The trial court denied the motion, but the Supreme Court of Virginia ultimately reversed the ruling. Id.

---

1. In this respect, Justice Cook's concurring opinion was prescient in noting that the *Weideman* majority's Fourth Amendment balancing analysis was unnecessary when the stop is based upon probable cause. 94 Ohio St.3d at 507, 764 N.E.2d 997.

2. We note that the Fifth District issued its opinions in the cases before us prior to the release of the Supreme Court's decision in *Moore.*

The United States Supreme Court then reversed that judgment, reinstating the trial court's denial of the motion to suppress. Id. at ——, 128 S.Ct. at 1608, 170 L.Ed.2d 559

{¶ 17} *Moore* explained that "when an officer has probable cause to believe a person committed *even a minor crime* in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." (Emphasis added.) Id. at —— U.S. ——, 128 S.Ct. at 1604, 170 L.Ed.2d 559. The court further acknowledged that although states could legislate a higher standard on searches and seizures, those laws do not alter the requirements of the Fourth Amendment. Id.

{¶ 18} Applying Virginia's law to the facts of the case, the Supreme Court observed that although the statute provided a greater degree of protection than that afforded under the Fourth Amendment, it did not provide a remedy of suppression for a violation. *Moore*, —— U.S. at ——, 128 S.Ct. at 1606, 170 L.Ed.2d 559. Thus, because of the need for consistency and bright-line standards when applying the Fourth Amendment, the court concluded that "it is not the province of the Fourth Amendment to enforce state law." Id. at ——, 128 S.Ct. at 1608, 170 L.Ed.2d 559.

{¶ 19} In the case before us, it is undisputed that there was a violation of R.C. 2935.03(A)(1). However, the majority of the appellate court did not sufficiently appreciate the importance of the fact that Sergeant Hershberger personally observed Jones driving without headlights in the dark in clear contravention of several Ohio statutes.[3] This conduct constituted a traffic violation, thereby giving Sergeant Hershberger probable cause to initiate the stop because he had personally observed the violation. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 11–12, 665 N.E.2d 1091 ("where an officer has * * * probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid").[4]

{¶ 20} The appellate court's focus on the fact that Sergeant Hershberger was outside his jurisdiction and on his reasons for being there is irrelevant to the

---

3. See, e.g., R.C. 4513.03 (lights required between sunset and sunrise, during unfavorable weather conditions, or any other time when there is insufficient light, 4513.04 (every motor vehicle required to be equipped with two operable headlights, 4513.14 (headlights must be on during the times set forth in R.C. 4513.03), and 4513.15 (headlights required sufficient to reveal persons, vehicles, or substantial objects at a safe distance).

4. Our holding today does not modify well-settled law that reasonable suspicion is sufficient to justify an investigatory stop. See *United States v. Lopez–Soto* (C.A.9, 2000), 205 F.3d 1101, 1104. We discuss probable cause only to highlight the fact that an extraterritorial stop for a traffic violation based on probable cause is reasonable. *Whren v. United States* (1996), 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89. Similarly, when the extraterritorial stop is based on reasonable suspicion rather than probable cause, *Weideman* still controls.

Fourth Amendment analysis. The sole focus of the inquiry should have been on the stop itself because the violation of R.C. 2935.03 does not rise to the level of a constitutional violation for the reasons expressed in *Moore*. See also *Rose v. Mulberry, Arkansas* (C.A.8, 2008), 533 F.3d 678, 679–680 ("the determinative issue is whether an arrest by a city police officer outside of his jurisdiction but made with probable cause violates the Fourth Amendment as a matter of law. * * * [The officer] lacked the authority under Arkansas law to make traffic stops and arrests on the Interstate. Nevertheless, because he had probable cause to arrest for the offense * * * no Fourth Amendment violation occurred").

{¶ 21} Although it could have done so,[5] the General Assembly chose not to provide any remedy for a violation of R.C. 2935.03(A)(1). Thus, pursuant to *Moore*, we are not in the position to rectify this possible legislative oversight by elevating a violation of R.C. 2935.03 to a Fourth Amendment violation and imposing the exclusionary rule, because the stop in this case was constitutionally sound. *Moore*, —— U.S. at ——, 128 S.Ct. at 1608, 170 L.Ed.2d 559.

{¶ 22} Likewise, we must reject appellees' entreaties that we develop a balancing test for determining when to impose a suitable sanction for a law-enforcement officer's violation of the territorial limits on arrest powers. Generally, establishing a remedy for a violation of a statute remains in the province of the General Assembly, not the Ohio Supreme Court. *State ex rel. Ohio Democratic Party v. Blackwell,* 111 Ohio St.3d 246, 2006-Ohio-5202, 855 N.E.2d 1188, ¶ 37. The Fourth Amendment simply does not require this result. *Moore*, —— U.S. at ——, 128 S.Ct. at 1608, 170 L.Ed.2d 559.

### Conclusion

{¶ 23} We share the concerns that appellees express about law-enforcement officers who violate the territorial requirements of R.C. 2935.03. However, as discussed above, the remedy for a violation of the statute falls within the realm of the legislative branch. The Fourth Amendment does not provide the remedy that appellees seek in this case.

{¶ 24} Accordingly, we reverse the judgment of the court of appeals and reinstate the trial court's judgment.

Judgment reversed.

---

5. For example, the General Assembly passed the speedy-trial statutes, R.C. 2945.71 et seq., to protect a defendant's Sixth Amendment right to a speedy trial. *State ex rel. Micheel v. Vamos* (1945), 144 Ohio St. 628, 631, 30 O.O. 225, 60 N.E.2d 305. However, to guarantee that the right to a speedy trial is fully effectuated, the General Assembly also enacted R.C. 2945.73, which explicitly provides for dismissal of a case when the speedy-trial laws are violated.

MOYER, C.J., and LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

PFEIFER and O'DONNELL, JJ., concur separately.

---

**O'DONNELL, J., concurring.**

{¶ 25} The sole issue before the court is whether the exclusionary rule should be applied to suppress evidence obtained as a result of a police officer's extraterritorial traffic stop. The majority reverses the judgment of the Fifth District Court of Appeals and holds that the trial court properly denied Jones's and Skropits's motions to suppress the evidence. I concur with that result based on the following three-part analysis.

(1) *Whether an officer's extraterritorial stop in violation of R.C. 2935.03 requires exclusion of evidence.*

{¶ 26} As the court of appeals stated in its decision, "Revised Code § 2935.03(A)(1) governs a police officer's jurisdiction to arrest. It is undisputed in this case that the arresting officer was outside of his territorial jurisdiction when he made the arrest as the subject vehicle was located outside of the East Canton border." *State v. Jones,* Stark App. No. 2007–CA–00139, 2007-Ohio-5818, 2007 WL 3171206, ¶ 16. Thus, it may be assumed that the officer violated R.C. 2935.03, and the question becomes whether the exclusionary rule applies.

{¶ 27} In *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 18 O.O.3d 435, 416 N.E.2d 598, this court unanimously answered the question in the negative. There, the court assumed that a Kettering police officer violated R.C. 2935.03 by stopping a car in the city of Dayton for erratic driving. Id. at 234, 18 O.O.3d 435, 416 N.E.2d 598. The issue was whether the statutory violation required application of the exclusionary rule. Id. Citing numerous cases in support, this court explained:

{¶ 28} "It is clear * * * that the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights.

{¶ 29} "We turn now to examine the facts in this case to determine whether a constitutional violation occurred. We find none. At the outset, it is readily apparent that [the officer] had probable cause to arrest the defendant after observing his erratic driving behavior." Id. at 234–235, 18 O.O.3d 435, 416 N.E.2d 598.

{¶ 30} Thus, a violation of R.C. 2935.03 does not justify exclusion unless the violation also rises to a constitutional violation.

**(2) *Whether an extraterritorial stop in violation of R.C. 2935.03 is a per se violation of the Fourth Amendment, thus requiring exclusion of evidence.***

{¶ 31} In *State v. Weideman* (2002), 94 Ohio St.3d 501, 764 N.E.2d 997, a Ravenna police officer left his territory to conduct a routine errand, and while outside of the city limits, he observed a driver traveling left of center. Id. at 502, 764 N.E.2d 997. In violation of R.C. 2935.03, the officer stopped the vehicle, conducted a sobriety test, and detained the driver for drunk driving until a state trooper arrived to make the arrest. Id. at 502–503, 764 N.E.2d 997. This court eventually accepted review of the following conflict question certified by the Eleventh District Court of Appeals: " 'Whether a stop and detention of a motorist by a police officer, who is *beyond* his or her jurisdictional limits, for an offense observed and committed *outside* the officer's jurisdiction automatically constitutes a *per se* unreasonable seizure under the Fourth Amendment, thereby triggering the mandatory application of the exclusionary rule to suppress all evidence flowing from the stop.' " (Emphasis sic.) Id. at 504, 764 N.E.2d 997.

{¶ 32} This court answered in the negative: "Where a law enforcement officer, acting outside the officer's statutory territorial jurisdiction, stops and detains a motorist for an offense committed and observed outside the officer's jurisdiction, the seizure of the motorist by the officer is not unreasonable *per se* under the Fourth Amendment. Therefore, the officer's statutory violation does not require suppression of all evidence flowing from the stop." 94 Ohio St.3d at 506, 764 N.E.2d 997. Rather, the only issue is whether the officer had probable cause, and "[t]he trial court did not err when it concluded that defendant's manner of operating her motor vehicle gave [the officer] sufficient probable cause to make the stop." Id.

{¶ 33} Our conclusion in *Weideman* is consistent with the United States Supreme Court's recent decision in *Virginia v. Moore* (2008), —— U.S. ——, 128 S.Ct. 1598, 170 L.Ed.2d 559. There, a police officer stopped and arrested Moore on the belief that he was driving on a suspended license, but Virginia law provided that an officer could not arrest a driver for this offense. Id. at ——, 128 S.Ct. at 1602, 170 L.Ed.2d 559. The issue on appeal to the Supreme Court was whether the officer's violation of the state statute necessarily resulted in a violation of the Fourth Amendment. The court held that it did not: "[W]hen an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." Id. at ——, 128 S.Ct. at 1604, 170 L.Ed.2d 559.

{¶ 34} Thus, in this case, the officer's extraterritorial stop and arrest of Jones and Skropits in violation R.C. 2935.03 is not a per se violation of the Fourth Amendment requiring application of the exclusionary rule. The Fourth Amend-

ment requires exclusion only when the officer lacked probable cause to make the stop; the fact that the stop was extraterritorial is irrelevant.

### (3) *Whether the officer had probable cause to stop Jones and Skropits.*

{¶ 35} Here, the police officer testified at the suppression hearing that he had personally observed that the headlights on Jones and Skropits's truck were nonfunctional, in violation of several sections in R.C. Chapter 4513. When an officer personally observes a traffic violation, the officer has probable cause to initiate a traffic stop. *Bowling Green v. Godwin,* 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698.

{¶ 36} It could be argued that the broken headlights were mere pretext and that the real reason for stopping Jones and Skropits was the officer's subjective belief that they were involved in a "hit-skip" accident in East Canton, a violation that the officer did not observe. The United States Supreme Court, however, has consistently rejected subjective analyses and other claims of pretext in the context of probable cause. See *Whren v. United States* (1996), 517 U.S. 806, 813–814, 116 S.Ct. 1769, 135 L.Ed.2d 89, quoting *United States v. Robinson* (1973), 414 U.S. 218, 221, 94 S.Ct. 467, 38 L.Ed.2d 427, fn. 1 ("we have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers * * *. [A] traffic-violation arrest * * * [will] not be rendered invalid by the fact that it was 'a mere pretext for a narcotics search' "); see also *Arkansas v. Sullivan* (2001), 532 U.S. 769, 772, 121 S.Ct. 1876, 149 L.Ed.2d 994, quoting *Whren,* 517 U.S. at 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (" 'subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis' "); *Bond v. United States* (2000), 529 U.S. 334, 338, 120 S.Ct. 1462, 146 L.Ed.2d 365, fn. 2 ("the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment").

{¶ 37} Accordingly, because the arresting officer personally observed the traffic violation, he had probable cause to stop Jones and Skropits. And because there is no constitutional violation, there is no basis for applying the exclusionary rule.

{¶ 38} I respectfully concur.

PFEIFER, J., concurs in the foregoing opinion.

---

John D. Ferrero, Stark County Prosecuting Attorney, and Ronald Mark Caldwell, Assistant Prosecuting Attorney, for appellant.

Tammi R. Johnson, Stark County Public Defender, and Steven A. Reisch, Assistant Public Defender, for appellee Adam David Jones.

George Urban, for appellee Shawn Michael Skropits.

Richard Cordray, Attorney General, Benjamin Mizer, Solicitor General, and Todd Nist, Assistant Solicitor, urging reversal for amicus curiae, Attorney General of Ohio.