[Cite as *State v. Coxwell*, 2012-Ohio-6215.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2011-L-075** |
| ROGER D. COXWELL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 10 CR 000438.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Christopher P. Tucci*, Attorney Tucci, L.L.C., 3 South State Street, Suite 1, Painesville, OH 44077 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Roger D. Coxwell, appeals from a judgment of the Lake County Court of Common Pleas, sentencing him for operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them; operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance; driving under OVI suspension; and failure to maintain an assured clear distance ahead.

{¶2} Appellant was indicted on four counts: count one, operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them, a felony of the third degree, in violation of R.C. 4511.19(A)(1)(a); count two, operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance, a felony of the third degree, in violation of R.C. 4511.19(A)(1)(j)(vii); count three, driving under OVI suspension, a misdemeanor of the first degree, in violation of R.C. 4510.14(A); and count four, failure to maintain an assured clear distance ahead, a minor misdemeanor, in violation of R.C. 4511.21. Appellant filed a waiver of his right to be present at the arraignment and the trial court entered a not guilty plea on his behalf.

{¶3} Thereafter, appellant filed a motion in limine and a motion to suppress evidence, contesting the admissibility of blood that was drawn from him during the investigation. Following a hearing, the court overruled both motions.

{¶4} Appellant subsequently waived his right to a jury trial on counts three and four. Appellant withdrew his not guilty plea on counts three and four and entered an oral and written guilty plea on those two counts. The court accepted appellant's guilty plea on counts three and four. The matter proceeded to a jury trial on counts one and two. Prior to trial, appellant entered into a stipulation with the state, agreeing that he had been previously convicted of or pleaded guilty to a violation of R.C. 4511.19(A) in another case.

{¶5} At the suppression hearing, two witnesses testified: Marshaun Kahn-Assian ("Kahn-Assian"), a certified emergency medical technician-paramedic with LakeWest Hospital, and Lieutenant Robert Gonzalez ("Lieutenant Gonzalez"), an officer with the Eastlake Police Department ("EPD"). In all major respects, Kahn-Assian's and

2

Lieutenant Gonzalez's testimony at the suppression hearing was consistent with their trial testimony.

{¶6} On June 11, 2010, appellant's vehicle rear-ended another car on State Route 91. Scott Wolenski ("Wolenski"), the driver of the car that was hit, and Mary Storm ("Storm"), the front seat passenger, testified that traffic was moving slowly due to construction. Wolenski's vehicle was abruptly jarred forward by three separate impacts from appellant's car. Wolenski and Storm believed that appellant was intoxicated, because his speech was slurred, he was stumbling, seemed confused, and was combative.

{¶7} Lieutenant Gonzalez and Officer Marc Christian ("Officer Christian"), also with the EPD, were dispatched to the scene. They observed that appellant's vehicle rear-ended Wolenski's car. Lieutenant Gonzalez and Officer Christian also believed that appellant was under the influence. According to Officer Christian, appellant was hunched over and leaning on the back of Wolenski's vehicle. Officer Christian initially thought appellant may have been injured, but appellant told him he was fine and wanted to go home. Appellant was swaying and appeared pale.

{¶8} Lieutenant Gonzalez testified that he did not detect alcohol on appellant, but appellant's actions and answers led him to believe he was impaired. Specifically, appellant had difficulty maintaining his balance and exhibited slurred speech. Therefore, Lieutenant Gonzalez administered standard field sobriety tests, including the horizontal gaze nystagmus, the one-leg stand, and the walk-and-turn. Appellant performed poorly on two of the three tests. He repeatedly put his foot down during the one-leg stand test. Also, with respect to the walk-and-turn test, appellant was told to

3

take nine steps in a straight line, pivot, then take nine steps back. Appellant indicated that he understood. However, he had difficulty standing and walking heal to toe, stepped off the line, staggered to the side, and continued in one direction for approximately 20 steps instead of nine.

{¶9} Appellant was subsequently arrested and taken to the EPD. He agreed to take a Breathalyzer test at the station. The results were .003 percent BAC, under the legal limit. Thereafter, appellant consented to a blood test and was taken to LakeWest Hospital. Kahn-Assian withdrew appellant's blood for legal reasons only, as appellant was not in need of any medical services.

{¶10} Appellant's blood was later tested. Two toxicologists, Katie Gabbard and Mia Williams-Burnett, testified that appellant had 119 nanograms per milliliter of benzodiazepines, 4.8 nanograms per milliliter of marijuana, and greater than 100 nanograms per milliliter of marijuana metabolite in his blood.

{¶11} Douglas Rohde ("Rohde"), supervisor of chemistry and toxicology with the Lake County Crime Lab, testified regarding the effects of the foregoing drugs. According to Rohde, low levels of marijuana cause an individual to have altered time and space perception, euphoria, relaxation, and a decrease in motor skills and function. As the concentration of marijuana in a person's blood increases, the central nervous system becomes depressed, which slows down an individual's response time and his or her ability to coordinate movement. Moreover, benzodiazepines can cause decreased coordination, memory loss, confusion, and psychomotor inabilities. When these drugs are used together, it causes a "double hit" on the central nervous system.

4

{¶12} After the close of the state's case-in-chief, appellant filed a Crim.R. 29 motion for acquittal. The trial court overruled it. The defense then presented its case. The only witness to testify for the defense was appellant's cousin, Shawn Cziryak ("Cziryak"). Cziryak testified that three days after the accident, he noticed that appellant's right foot and ankle were swollen and appellant had trouble bearing weight on it. Appellant did not renew his Crim.R. 29 motion for acquittal at the conclusion of all the evidence. The jury found appellant guilty on counts one and two. The trial court deferred sentencing in order to conduct a presentence investigation report.

{¶13} The trial court sentenced appellant to three years in prison on count one, and 180 days on count three, to be served concurrently. Appellant was ordered to pay a $1,350.00 mandatory fine on count one, and a $250.00 mandatory fine on count three. Appellant was given 23 days of credit for time already served. The trial court determined that counts one and two were allied offenses of similar import pursuant to R.C. 2941.25, and merged the two counts for purposes of sentencing. Because counts one and two were merged, appellant was not sentenced separately on count two. Appellant was ordered to pay a $10.00 fine on count four, which was suspended. Appellant's driver's license was suspended for six years on count one, and one year on count three, to be served concurrently. Appellant filed a timely appeal, asserting the following assignments of error:

{¶14} "[1.] The trial court erred when it denied defendant-appellant's motion to suppress and motion in limine.

{¶15} "[2.] The trial court erred when it denied defendant-appellant's motion for acquittal under Criminal Rule 29(A).

5

**{¶16}** "[3.] The jury verdict was against the manifest weight of the evidence in violation of defendant-appellant's right to due process of law."

**{¶17}** In his first assignment of error, appellant argues the trial court erred in denying his motion to suppress and motion in limine. Appellant alleges that his blood was withdrawn in violation of Ohio law because Kahn-Assian was not qualified to withdraw his blood.

**{¶18}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

**{¶19}** We review the trial court's decision to grant or deny a motion in limine under an abuse of discretion standard. *State v. Lemons*, 11th Dist. No. 2009-T-0032, 2010-Ohio-3807, ¶37. An abuse of discretion is the trial court's ""failure to exercise sound, reasonable, and legal decision-making."" *State v. Sawyer*, 11th Dist. No. 2011-P-0003, 2011-Ohio-6098, ¶72, quoting *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. While the "abuse of discretion" standard gives some deference to the trial court, "[w]hen an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error * * *. '" *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, 2012-Ohio-2120, ¶31, quoting *Beechler*, 2010-Ohio-1900, at ¶62.

**{¶20}** Appellant relies on R.C. Chapter 4765, "Division of Emergency Medical Services," in support of his contention that his blood was improperly withdrawn. However, appellant's reliance is misplaced because R.C. Chapter 4765 only applies in emergency situations where emergency medical services are provided. *See* R.C. 4765.39(D)(Authorized services by emergency medical technician-paramedic), R.C. 4765.35(B)(Authorized services by first responders), R.C. 4765.01(G)(Division of emergency medical services definitions), R.C. 4765.37(B)(Authorized services of an EMT-Basic), R.C. 4765.38(B)(Authorized services of an EMT-Intermediate), and R.C. 4765.39(B)(Authorized services of a EMT-paramedic).

**{¶21}** The aforementioned statutory references relate to situations that are of an emergency nature and where individuals are responding to the scene of an emergency, such as when paramedics respond to transport an injured person to a hospital. However, this case does not involve an emergency situation because Kahn-Assian did not provide emergency medical services. Rather, appellant, who was not in need of any medical services, was taken from the station to the hospital to have his blood drawn for purposes of determining whether he was under the influence of drugs or alcohol to a degree that would constitute a violation of the law. Thus, R.C. Chapter 4765 is inapplicable to the facts presented.

**{¶22}** Appellant also alleges that Kahn-Assian, as an emergency medical technician-paramedic, was not qualified to withdraw his blood under the version of R.C. 4511.19(D)(1)(b) that was effective at the time of appellant's offense. At the time of appellant's offense, R.C. 4511.19(D)(1)(b) stated, in part:

7

{¶23} "Only a physician, a registered nurse, or a qualified technician, chemist, or phlebotomist shall withdraw a blood sample for the purpose of determining the alcohol, drug, controlled substance, metabolite of a controlled substance, or combination content of the whole blood, blood serum, or blood plasma."

{¶24} The statute was later amended on September 17, 2010, adding to the list of approved testing personnel "an emergency medical technician-intermediate, [and] an emergency medical technician-paramedic." Although Kahn-Assian is a certified emergency medical technician-paramedic, the court found him to also be a "qualified technician" under the former version of the statute. Specifically, the court determined there was sufficient evidence of Kahn-Assian's training and experience making him a "qualified technician" which permitted him to withdraw appellant's blood under the version of R.C. 4511.19(D)(1)(b) at the time of appellant's offense.

{¶25} Appellant essentially argues that the trial court erred in determining that Kahn-Assian was a "qualified technician" authorized to draw appellant's blood under the former version of R.C. 4511.19(D)(1)(b), and that Kahn-Assian's failure to meet that requirement rendered the withdrawal of appellant's blood to have been secured illegally, in violation of the Fourth Amendment of the Constitution. Accordingly, appellant argues that based on that error, his motion to suppress should have been granted in order to eliminate the incriminating evidence adduced by the withdrawal of his blood. We note that appellant simply makes the bald assertion that because an emergency medical technician-paramedic was not an individual specifically listed in the former version of R.C. 4511.19(D)(1), Kahn-Assian was not qualified to withdraw blood for purposes of prosecution under that provision. However, appellant cites no authority in support of his

8

contention. Furthermore, for the reasons that follow, we do not need to reach the question of whether Kahn-Assian qualified as someone authorized to draw appellant's blood in order to address appellant's argument.

**{¶26}** It is well-settled that "the exclusionary rule will not ordinarily be applied to suppress evidence which is the product of police conduct that violates a statute but falls short of a constitutional violation, unless specifically required by the legislature." *State v. French*, 72 Ohio St.3d 446, 449 (1995), citing *Kettering v. Hollen*, 64 Ohio St.2d 232, 235 (1980). In sum, the exclusionary rule is only applicable to constitutional violations, and is not applicable to violations of state statutes that do not rise to the level of constitutional violations. *State v. Myers*, 26 Ohio St.2d 190, 196 (1971); *see also State v. Downs,* 51 Ohio St.2d 47, 63-64 (1977); *State v. Davis*, 56 Ohio St.2d 51, 56 (1978); *State v. Droste*, 83 Ohio St.3d 36, syllabus (1998).

**{¶27}** Here, the alleged violation at issue is statutory rather than constitutional. That is, first, the statute at issue, former R.C. 4511.19(D)(1)(b), does not expressly provide for the exclusion of evidence as a remedy if the withdrawal of blood is obtained by someone who does not fulfill the definition of a "qualified technician." *See State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, ¶21 (General Assembly chose not to provide any remedy for a statutory violation, thus court not in a position to rectify a potential legislative oversight by elevating a statutory violation to a Fourth Amendment violation and imposing the exclusionary rule).

**{¶28}** Second, even if we were to conclude that Kahn-Assian did not fit the definition of a "qualified technician" at the time of appellant's offense, this court finds

that such a statutory violation does not rise to the level of a constitutional violation such that the exclusionary rule applies under the facts and circumstances of the case.

{¶29} As the search and seizure of evidence under the Fourth Amendment is scrutinized, the constitutional imperative is that the search be "reasonable." Thus, the question becomes whether the withdrawal of blood, in violation of R.C. 4511.19(D)(1)(b), was an "unreasonable" search. If it was, we must conclude that the statutory violation rose to the level of a constitutional violation. *See City of Willoughby v. Dunham,* 11th Dist. No. 2010-L-068, 2011-Ohio-2586, ¶63 (Cannon, J., concurring in part, dissenting in part)(noting that the Supreme Court of Ohio has consistently considered the totality of the circumstances in determining whether a violation of a statutory standard is unreasonable *per se*).

{¶30} Appellant's argument is that because an emergency medical technician-paramedic was not an individual specifically listed in the former version of R.C. 4511.19(D)(1)(b), Kahn-Assian, an emergency medical technician-paramedic, was not qualified to withdraw blood from appellant under Ohio law, and therefore, the trial court erred when it denied appellant's motion to suppress. This court finds nothing in the record of this case to support the conclusion that the withdrawal of blood by Kahn-Assian constituted an "unreasonable" search, even if Kahn-Assian was not a "qualified technician" under the statute.

{¶31} Accordingly, based on the foregoing, we disagree with appellant that the trial court erred in denying his motion to suppress and/or motion in limine. Appellant's first assignment of error is without merit.

**{¶32}** In his second assignment of error, appellant contends the trial court erred in denying his motion for acquittal under Crim.R. 29(A). Appellant maintains there was insufficient evidence that he was under the influence of alcohol, a drug of abuse, or a combination of them, under R.C. 4511.19(A)(1)(a) and (j)(vii). As stated previously, counts one and two were merged for purposes of sentencing such that count two does not constitute a conviction. *See State v. Poindexter*, 36 Ohio St.3d 1, 5 (1988) (Conviction includes both the guilt determination and the penalty imposition). Thus, appellant's argument as to whether there was sufficient evidence to allow the jury to decide his guilt under R.C. 4511.19(A)(1)(j)(vii), which served as the basis of count two, will not be considered by this court.

**{¶33}** As previously stated, appellant did not renew his Crim.R. 29 motion at the conclusion of all the evidence. However, this court has held that an appellant is permitted to argue insufficiency of the evidence even though he has not renewed his Crim.R. 29 motion at the conclusion of all the evidence. *State v. Cartulla*, 11th Dist. No. 2008-L-133, 2009-Ohio-2794, ¶10. Therefore, we will address appellant's second assignment of error on its merits.

**{¶34}** With regard to a Crim.R. 29 motion, in *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), the Supreme Court of Ohio established the test for determining whether a motion for acquittal is properly denied. The Supreme Court stated that "pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Id.* at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the

11

sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶35} As this court stated in *State v. Schlee*, 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13-14 (Dec. 23, 1994):

{¶36} "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.

{¶37} "'"(* * *) The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.* * * *"'" (Emphasis sic.)

{¶38} R.C. 4511.19 (A)(1)(a) states in pertinent part:

{¶39} "(A)(1) No person shall operate any vehicle * * * within this state, if, at the time of the operation, any of the following apply:

{¶40} "(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."

{¶41} The state presented sufficient evidence to sustain appellant's convictions for operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them. As stated, two toxicologists testified that appellant, the driver of the vehicle that rear-ended Wolenski's car, had 119 nanograms per milliliter of benzodiazepines,

12

4.8 nanograms per milliliter of marijuana, and greater than 100 nanograms per milliliter of marijuana metabolite in his blood, in violation of R.C. 4511.19(A)(1)(a).

{¶42} Based on all of the testimony, previously discussed in detail, the jury could reasonably conclude that the elements of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them were proven. *Schlee,* supra, at *13-14.

{¶43} Appellant's second assignment of error is without merit.

{¶44} In his third assignment of error, appellant alleges the jury's verdict was against the manifest weight of the evidence. He maintains the weight of the evidence did not demonstrate guilt beyond a reasonable doubt.

{¶45} In *Schlee*, *supra*, at *14-15, this court stated:

{¶46} "'[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶47} "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.)

{¶48} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387

13

(1997).  With regard to the manifest weight of the evidence, the jury is in the best position to assess the credibility of witnesses.  *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

{¶49}  In our case, the jury placed great weight on the state's witnesses.  For the reasons stated in our discussion regarding the motion for acquittal, we cannot say the jury clearly lost its way in finding appellant guilty of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them.  *Schlee*, *supra*, at *14-15; *Thompkins*, *supra*, at 387.

{¶50}  Appellant's third assignment of error is without merit.

{¶51}  For the foregoing reasons, appellant's assignments of error are not well-taken.  The judgment of the Lake County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

14