[Cite as *State v. Paolucci*, 2018-Ohio-1332.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-L-059** |
| JOSEPH A. PAOLUCCI, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2015 CR 000893.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Kelsey R. Lutz*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer*, Lake County Public Defender, *Vanessa R. Clapp*, and *Aaron T. Baker*, Assistant Public Defenders, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Joseph A. Paolucci, appeals the denial of his Motion to Suppress by the Lake County Court of Common Pleas. The issue before this court is whether the R.C. 2935.03(D) requirements for effecting an extra-jurisdictional arrest are satisfied where a municipal police officer begins following a suspect after observing marked lanes violations but does not stop the suspect until after he has left the territorial

jurisdiction of the municipality. For the following reasons, we affirm the decision of the court below.

{¶2} On February 19, 2016, the Lake County Grand Jury indicted Joseph A. Paolucci for Operating a Vehicle under the Influence of Alcohol, a Drug of Abuse, or a Combination of Them (Count 1), a felony of the third degree in violation of R.C. 4511.19(A)(1)(a) with the specification that he "has been previously convicted of or pleaded guilty to five or more violations of division (A) or (B) of R.C. §4511.19 * * * within twenty years of committing this offense" pursuant to R.C. 2941.1413, and Driving in Marked Lanes (Count 2), a minor misdemeanor in violation of R.C. 4511.33(A)(1).

{¶3} On March 7, 2016, Paolucci entered a plea of "not guilty" to all charges.

{¶4} On April 14, 2016, Paolucci filed a Motion to Suppress, to which the State responded on April 25, 2016. Paolucci filed a Supplemental Motion to Suppress on May 25, 2016.

{¶5} On May 27, 2016, a hearing was held on the Motion to Suppress.

{¶6} On July 15, 2016, the trial court entered an Order Denying Motion to Suppress Evidence. The court made the following relevant findings:

> On October 22, 2015, at about 12:26 a.m., Officer [Donald] Swindell [of the Mentor Police Department] * * * saw the defendant operate a motor vehicle, a silver 2011 Chevrolet Camaro, northbound on S.R. 306 and commit a marked lane traffic violation by at least one tire drifting completely over and left of the double-yellow lane divider just north of the eastbound exit/entrance ramps of S.R. 2.
>
> The officer * * * followed the defendant as he entered the westbound ramp from S.R. 306 to S.R. 2.
>
> The officer was behind the defendant when he saw the defendant commit a second lane violation, by at least one tire going

2

completely left of the left-hand yellow longitudinal lane marking on the ramp.

While traveling westbound on S.R. 2 in the right-hand lane, just east of the Mentor-Willoughby corporation line, but in the City of Mentor, according to the officer, the defendant crossed the left-hand broken lane line into the center lane with at least one tire, constituting a third marked lanes violation.

The officer activated his emergency lights at the top of the exit ramp. The defendant turned right onto Lost Nation Road and immediately turned left on Reeves Road and stopped shortly after turning onto Reeves Road.

The officer had reasonable suspicion from the defendant's erratic driving to believe that the defendant was either committing serial marked lane violations or that the defendant was an impaired driver, or both. The officer's police training indicated that further investigation was necessary to buttress his reasonable suspicions and determine his method of approach. The officer followed the defendant for about 45 seconds outside the City of Mentor to the next exit on S.R. 2. The facts support a finding that the pursuit of the defendant by the officer began within his jurisdiction and without unreasonable delay after the marked lane offenses were committed.

The officer complied with R.C. 2935.03(D) in pursuing, arresting, and detaining the defendant outside the jurisdiction of the Mentor Police Department, because the officer's pursuit took place without unreasonable delay after the offense was committed, the pursuit was initiated within the City of Mentor, and the offense involved was an offense for which points are chargeable pursuant to R.C. 4510.036.

{¶7} On January 27, 2017, Paolucci entered a written plea of "no contest" to the first count of the Indictment, Operating a Vehicle under the Influence of Alcohol.

{¶8} On March 9, 2017, the trial court sentenced Paolucci to serve a definite term of incarceration of twenty-four months for Operating a Vehicle under the Influence of Alcohol and an additional one-year term for the specification and imposed a mandatory fine of $1,350. Paolucci's driver's license was permanently revoked, his

3

vehicle was declared forfeit, and he was ordered to undergo mandatory drug and alcohol treatment.

{¶9} On April 12, 2017, Paolucci filed a Notice of Appeal. On appeal, Paolucci raises the following assignment of error:

{¶10} "[1.] The trial court erred by failing to grant a motion to suppress when Mentor Police violated the guarantee against unreasonable searches and seizures established by Article I, Section 14 of the Ohio Constitution, by initiating a traffic stop for a minor misdemeanor outside of police jurisdiction and without statutory authority to do so."

{¶11} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, "the trial court is best able to decide facts and evaluate the credibility of witnesses." *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 41. "Its findings of fact are to be accepted if they are supported by competent, credible evidence, and we are to independently determine whether they satisfy the applicable legal standard." *Id.* The reviewing court must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citation omitted.) *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12; *State v. Orosz*, 11th Dist. Lake No. 2016-L-057, 2017-Ohio-707, ¶ 22 ("[o]nce the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts") (citation omitted).

4

{¶12} Article I, Section 14 of the Ohio Constitution provides as follows: "The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated * * *."

{¶13} Paolucci contends that Officer Swindell lacked statutory authority to effect an extra-jurisdictional stop and, therefore, "all evidence which followed the stop should be suppressed as fruit of the poisonous tree." Appellant's brief at 6.

{¶14} Paolucci relies upon the Ohio Supreme Court's decision in *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, for the proposition that: "A traffic stop for a minor misdemeanor made outside a police officer's statutory jurisdiction or authority violates the guarantee against unreasonable searches and seizures established by Article I, Section 14 of the Ohio Constitution." *Id.* at ¶ 26.[1]

{¶15} The authority of a municipal police officer to effect an extra-jurisdictional arrest is defined as follows:

> If a * * * municipal police officer * * * is authorized * * * to arrest and detain, within the limits of the political subdivision, * * * a person until a warrant can be obtained, the peace officer, outside the limits of that territory, may pursue, arrest, and detain that person until a warrant can be obtained if all of the following apply:
>
> (1) The pursuit takes place without unreasonable delay after the offense is committed;
>
> (2) The pursuit is initiated within the limits of the political subdivision * * *;

---

1. We note the holding of this court in *State v. Annis*, 11th Dist. Portage No. 2001-P-0151, 2002-Ohio-5866, ¶ 20, that "simply because there is a statutory limit placed on township police officers' jurisdiction to arrest, does not mean that a violation of the statute is an infringement of a Fourth Amendment constitutional right." In *State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, 902 N.E.2d 464, syllabus, the Ohio Supreme Court held: "A law-enforcement officer who personally observes a traffic violation while outside the officer's statutory territorial jurisdiction has probable cause to make a traffic stop; the stop is not unreasonable under the Fourth Amendment to the United States Constitution." In *Brown*, however, the court did not find *Jones* controlling inasmuch as it concerned the Fourth Amendment while "'[t]he Ohio Constitution is a document of independent force." (Citation omitted.) *Brown*, 2015-Ohio-2438, at ¶ 24.

5

(3) The offense involved is a felony, a misdemeanor of the first degree or a substantially equivalent municipal ordinance, a misdemeanor of the second degree or a substantially equivalent municipal ordinance, or any offense for which points are chargeable pursuant to section 4510.036 of the Revised Code.

R.C. 2935.03(D).

{¶16} With respect to the first requirement, Paolucci argues that, "[g]iven that the Mentor Police officer deliberately waited and observed Mr. Paolucci's vehicle until he was outside of Mentor, the delay in pursuing him was unreasonable." Appellant's brief at 5.

{¶17} We find nothing unreasonable regarding Officer Swindell's pursuit of Paolucci. Properly speaking, the pursuit began immediately after Swindell observed the first marked lanes violation on S.R. 306 when he began following Paolucci. That Swindell did not immediately effect a stop was reasonable. As he explained at the suppression hearing:

> I was following the vehicle just to observe his driving. His lane violations * * * weren't endangering other people; however, they were violations nonetheless. So I was following the vehicle to see how his driving was continuing.

Also, Swindell effected the stop less than a minute after leaving the territorial jurisdiction of Mentor. The delay in effecting the actual stop in circumstances such as these has been found reasonable. *State v. Black*, 6th Dist. Fulton No. F-03-010, 2004-Ohio-218, ¶ 23.

{¶18} Paolucci next contends that "[m]ere following is not pursuit," and that the actual pursuit began "only at that time that [Officer Swindell] initiated the traffic stop in an attempt to catch Mr. Paolucci." Appellant's brief at 6.

6

{¶19} Although undefined, the term "pursuit" as used in the statute is consistently given a broad interpretation such as would encompass Officer Swindell's following Paolucci upon observation of the marked lanes violation.

> A review of recent cases reveals that the pursuit necessary to fulfill R.C. 2935.03(D)(1) and (2) need not be an uninterrupted chase, but may be a part of a police investigation of an earlier crime. Hence, many cases have held that an officer begins pursuit within her own jurisdiction when she radios descriptive information to fellow officers who eventually stop and arrest a suspect in another jurisdiction. In *Terrace Park v. McBride* (Dec. 11, 1985), Hamilton App. No. C-850061, unreported, a police officer saw two cars driving erratically, one driven by the defendant. The officer stopped one of the cars and radioed to another officer to detain defendant's car, which had already left the officers' jurisdiction. Defendant was detained for fifteen minutes until the first officer arrived to arrest him. The court found the officer's action to be a "pursuit" under R.C. 2935.03. The Eighth District Court of Appeals held in *State v. Majors* (Mar. 23, 1989), Cuyahoga App. No. 56410, unreported, that an arrest was authorized by R.C. 2935.03 where a police detective investigating an earlier breaking and entering came upon a car driven by the defendant which matched a prior radio description, stopped the car and held it while witnesses were summoned for purposes of identifying the suspect.
>
> In a similar drunk driving case, the court held in *State v. Beckwith* (1987), 38 Ohio App.3d 30, at 32, that there was a pursuit when officers followed a suspect observed driving erratically from their jurisdiction into a neighboring jurisdiction, where the suspect was subsequently arrested, because the officers followed the suspect for the purpose of stopping him. See, also, *Ohio v. Winters* (Feb. 7, 1990), Hamilton App. No. C-880773, unreported; *Garfield Heights v. Raymond Schentur* (Dec. 6, 1984), Cuyahoga App. No. 12684, unreported.

*State v. Jackson*, 10th Dist. Franklin No. 90AP-457, 1990 WL 174069, *2-3 (Nov. 6, 1990); *State v. Williamson*, 12th Dist. Butler No. CA2003-02-047, 2004-Ohio-2209, ¶ 27 (the officers' "actions amounted to a 'pursuit' within the meaning of R.C. 2935.03(D)" where they "obtained statements and a physical description from the victims, and then immediately drove to where appellant likely would be").

{¶20} Lastly, Paolucci argues that the offense involved which, according to Paolucci, was only the marked lanes violation, does not constitute a felony, first degree misdemeanor, or an offense for which points are chargeable under R.C. 4510.036. Appellant's brief at 6.

> Points are chargeable according to the following formula:
>
> (10) A violation of division (B) of section 4511.19 of the Revised Code or any ordinance substantially equivalent to that division prohibiting the operation of a vehicle with a prohibited concentration of alcohol in the whole blood, blood serum or plasma, breath, or urine .......... 4 points
>
> * * *
>
> (15) With the exception of violations under section 4510.12 of the Revised Code where no points shall be assessed, all other moving violations reported under this section .......... 2 points

R.C. 4510.036(C).

{¶21} Excluding the argument that Officer Swindell detained Paolucci with probable cause for a violation of R.C. 4511.19, a marked lanes violation constitutes a "moving violation" for which two points are assessed. R.C. 4510.01(E) ("'[m]oving violation' means any violation of any statute or ordinance that regulates the operation of vehicles * * * on the highways or streets").[2]

{¶22} Accordingly, Officer Swindell's extra-jurisdictional arrest and detention of Paolucci was lawful pursuant to R.C. 2935.03(D).

{¶23} The sole assignment of error is without merit.

---

2. At oral argument, counsel for Paolucci maintained that (C)(15) did not encompass marked lanes violations on the grounds that (C)(15) only applied to "moving violations reported under this section" and a marked lanes violation is not otherwise "listed" under division (C). Counsel's interpretation is nonsensical since, if marked lanes violation was listed in divisions (C)(1) through (14), division (C)(15) would be redundant. Rather, "reported under this section" refers to the bureau of motor vehicles' duty to "maintain records of convictions * * * for any violation of a state law or a municipal ordinance regulating the operation of vehicles" as provided for by R.C. 4510.036(A).

{¶24} For the foregoing reasons, the denial of Paolucci's Motion to Suppress by the Lake County Court of Common Pleas is affirmed. Costs to be taxed against appellant.

CYNTHIA WESTCOTT RICE, J., concurs,

THOMAS R. WRIGHT, P.J., concurs in judgment only.