OPINION
{¶ 1} Defendant-appellant, Ryan Jividen ("Jividen"), appeals the judgment of the Marion County Municipal Court finding him guilty of operating a vehicle under the influence alcohol. Because we find the trial court did not err in denying Jividen's motion to suppress evidence related to that offense, we affirm.
 {¶ 2} On September 2, 2004, Ohio State Highway Patrolman Nicholas Malo ("Patrolman Malo") stopped a vehicle in the City of Marion, Ohio, at approximately 2:25 a.m. Patrolman Malo did so after he witnessed the driver of the vehicle, Jividen, travel fifteen miles over the speed limit and cross two lanes of traffic without signaling.
 {¶ 3} Jividen exited his vehicle after the stop and spoke with Patrolman Malo. Jividen stated he had just left a bar known as the "OK Café," where he had been looking for a friend. During the conversation, Patrolman Malo smelled the odor of alcohol coming from Jividen's person. Patrolman Malo then administered Jividen a series of field sobriety tests.
 {¶ 4} Patrolman Malo administered a "Horizontal Gaze Nystagmus" (HGN) test in the police cruiser.[1] While doing so, Patrolman Malo noticed Jividen's eyes were "red and glassy." Moreover, Patrolman Malo concluded the test revealed six indications that Jividen was impaired.
 {¶ 5} Patrolman Malo also administered a "one-leg-stand" test and a "walk-and-turn" test. Jividen exhibited further signs of impairment during each examination. For example, Jividen swayed when he attempted to stand on one leg, and failed to touch his heel to his toe when he walked in a straight line.
 {¶ 6} Lastly, Patrolman Malo administered a portable breath test (PBT). The PBT estimated Jividen's blood alcohol content to be above the legal limit. After administering the PBT, Patrolman Malo arrested Jividen for driving under the influence of alcohol, a violation of R.C. 4511.19(A)(1).
 {¶ 7} Jividen pled not guilty in the Marion County Municipal Court, and, shortly thereafter, filed a motion to suppress evidence. Jividen argued in his motion that Patrolman Malo lacked probable cause to arrest him for driving under the influence of alcohol. But, after holding a suppression hearing, the trial court concluded Patrolman Malo did not lack probable cause and denied Jividen's motion.
 {¶ 8} Jividen subsequently changed his plea from not guilty to no contest. The trial court found Jividen guilty, sentenced him to thirty days in jail, and imposed a $1,000 fine. The trial court suspended twenty-seven of those days and $600 on the condition that Jividen complete a jail-alternate program.
 {¶ 9} It is from this decision that Jividen appeals and sets forth one assignment of error for our review.
 ASSIGNMENT OF ERROR The trial court erred in denying Defendant-Appellant's Motionto Suppress Evidence.
 {¶ 10} In his sole assignment of error, Jividen argues the trial court erred when it denied his motion to suppress evidence. For the reasons that follow, we find Jividen's assignment of error lacks merit.
 {¶ 11} Our review of the trial court's decision to deny a motion to suppress presents mixed questions of law and fact.State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, at ¶ 8. At a suppression hearing, the trial court serves as the trier of fact and is in the best position to evaluate the evidence and credibility of the witnesses. State v.Carter (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965. As such, we must give deference to those findings so long as they are supported by competent, credible evidence. Burnside,2003-Ohio-5372, at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must determine whether the facts satisfy the applicable legal standard. State v. McNamara (1997), 124 Ohio App.3d 706,710, 707 N.E.2d 539.
 {¶ 12} This case presents the issue of whether a police officer had probable cause to arrest a suspect for driving under the influence of alcohol. In answering that question, we must consider whether, at the moment of the arrest, the police officer had information derived from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe the suspect committed the act in question. State v.Homan (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952, citingBeck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223,13 L.Ed.2d 142; State v. Timson (1974), 38 Ohio St.2d 122, 127,311 N.E.2d 16. We must, therefore, examine the totality of the facts and circumstances surrounding the arrest. State v. Miller (1997),117 Ohio App.3d 750, 761, 691 N.E.2d 703.
 {¶ 13} The Ohio Supreme Court has held police officers must comply with standardized procedures when administering field sobriety tests. See State v. Schmitt (2004), 101 Ohio St.3d 79,2004-Ohio-37, 801 N.E.2d 446, at ¶ 9; Homan,89 Ohio St.3d at 426. Moreover, this court has found police officers may not use PBT results to establish probable cause to arrest a suspect for driving under the influence of alcohol. State v. Ferguson, 3d Dist. No. 4-01-34, 2002-Ohio-1763, at *2, citing Ohio Adm. Code3701-53-02; State v. Chesser (Sept. 25, 1998), 3d Dist. No. 9-98-22.
 {¶ 14} Jividen argues Patrolman Malo administered the HGN test in the police cruiser and became distracted when he did so. Jividen also argues Patrolman Malo did not provide proper instructions on how to perform the "one-leg-stand" test. Based on these arguments, Jividen concludes Patrolman Malo did not administer either test in compliance with standardized procedures.
 {¶ 15} Jividen does not provide any authority for the proposition that Patrolman Malo could not administer the HGN test in the police cruiser. And after reviewing a video recording of the stop, we are unable to say Patrolman Malo became distracted when he administered the test. Therefore, we find Jividen's argument to be unpersuasive.
 {¶ 16} Additionally, we note "[t]he totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where * * * test results must be excluded * * *." Ferguson,
2002-Ohio-1763, at *3, citing Homan, 89 Ohio St.3d at 427. Thus, even if Patrolman Malo did not provide Jividen with proper instructions regarding the "one-leg-stand" test, we must still determine whether the totality of the facts and circumstances support a finding of probable cause. See Ferguson,
2002-Ohio-1763, at *3.
 {¶ 17} At the suppression hearing, Patrolman Malo testified he stopped Jividen at approximately 2:25 a.m. Patrolman Malo testified that he did so because Jividen traveled fifteen miles over the speed limit and crossed two lanes of traffic without signaling. Although Patrolman Malo admitted Jividen did not slur his speech or have any difficulty exiting his vehicle, Patrolman Malo also testified: (1) Jividen stated he just left the "OK Café"; (2) Jividen smelled of alcohol; (3) Jividen admitted to drinking; (4) Jividen's eyes were "red and glassy"; and (5) Jividen exhibited signs of impairment during the each field sobriety test, particularly the HGN test. Given these facts, we find Patrolman Malo had sufficient information to cause a prudent person to believe Jividen operated his vehicle under the influence of alcohol.
 {¶ 18} In addition to the foregoing arguments, Jividen also argues Patrolman Malo improperly relied on the PBT results to establish probable cause to arrest. See Ferguson,
2002-Ohio-1763, at *2. But upon review of the record, we believe the facts and circumstances existing before Patrolman Malo administered the PBT support a finding of probable cause to arrest. Thus, we find Jividen's additional argument unavailing.
 {¶ 19} In sum, we conclude Patrolman Malo did not lack probable cause to arrest Jividen for driving under the influence of alcohol. Accordingly, the trial court did not err when it denied Jividen's motion to suppress evidence. Jividen's assignment of error is overruled.
 {¶ 20} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 Rogers and Shaw, J.J., concur.
[1] The HGN test utilizes several techniques to determine how much an individual's eyes jerk as they gaze to one side. The more intoxicated a person becomes, the less movement the eyes have to make toward the side before the jerking begins.