OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellant, Jerome Lee Howard, appeals the decision of the Belmont County Court of Common Pleas finding him guilty of one count of drug abuse in violation of R.C. 2925.11, a felony of the second degree, and one count of improper handling of a firearm in a motor vehicle, a felony of the fourth degree., Because Howard was illegally stopped and detained by the Bridgeport police, we conclude that the trial court abused its discretion when overruling Howard's motion to suppress. As Howard's two convictions were predicated upon evidence stemming from that unconstitutional stop and detention, we vacate those convictions.
 {¶ 2} On February 28, 2005, a confidential informant engaged in two drug transactions with a white male wearing a camouflage jacket and a black male with a shaved head and a round face near the old Big Bear Store. Chief Nippert and Deputy Benedict from the Belmont County Sheriff's Department observed the drug transactions. After the buys were completed, the officers watched the men walk towards the Lansing Limited Apartments located behind the Big Bear Store.
 {¶ 3} On March 2, 2005, one of the males involved in the drug buy and also a co-defendant, John Mesko, contacted Chief Nippert to inform him that he was willing to talk to the officers. Upon meeting with the officers, Mesko told them that he bought narcotics from a black male with the last name of Howard at an apartment in Lansing Limited Apartments. Mesko also told the officers that he was wearing a camouflage jacket on the day he purchased the drugs. Mesko then took the officers to the apartment where he indicated the black male frequented. He further explained to the officers that the black male drove an older blue and tan station wagon with a loud exhaust to and from Pittsburgh to obtain drugs. Finally, Mesko told the officers that the black male would be driving through Bridgeport on that day and would have drugs on him.
 {¶ 4} Later that day, Chief Nippert and Deputy Benedict contacted Chief Studence of the Bridgeport Police Department and told him to be on the lookout for the vehicle. That same day Chief Studence and Lieutenant Price observed a vehicle matching the description traveling through Bridgeport that was registered to a Jerome Howard. The officers initiated a stop of the vehicle in Brookside, which was outside their *Page 2 
jurisdiction. Chief Studence began writing out a ticket for the vehicle's loud exhaust.
 {¶ 5} Nippert, Benedict and Agent Broadwater responded to the scene, which notably was within their jurisdiction. Nippert asked Howard to exit the vehicle and told him that he was not under arrest for a traffic violation, but rather for drug trafficking. Nippert patted Howard down and found a baggie of crack cocaine in his pocket. Howard denied having any other drugs but admitted to having a gun in the back of the station wagon. After the gun was removed from the vehicle, Howard was taken to the Belmont County Sheriff's Department.
 {¶ 6} Howard was indicted for two counts of drug trafficking in violation of R.C. 2925.03, felonies of the second degree, one count of drug abuse in violation of R.C. 2925.11, a felony of the second degree, and one count of improper handling of a firearm in a motor vehicle, a felony of the fourth degree. Howard pled not guilty to all counts.
 {¶ 7} Howard filed a motion to suppress which was overruled by the trial court. The State dismissed the two counts of drug trafficking but tried Howard on the remaining two counts. Howard was found guilty and sentenced to a four year term of incarceration.
 {¶ 8} As his first assignment of error, Howard claims:
 {¶ 9} "The Trial Court committed prejudicial error in overruling the Defendant-Appellant's Motion to Dismiss/Motion to Suppress all physical evidence unlawfully seized from Defendant-Appellant and allowing its introduction into evidence."
 {¶ 10} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332. At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact since it is in the best position to resolve those issues. State v. Mills (1992),62 Ohio St.3d 357, 366. We are bound to accept the trial court's factual determinations made during the suppression hearing so long as they are supported by competent, credible evidence. State v. Harris (1994),98 Ohio App.3d 543, 546. Accepting these factual findings as true, an appellate court must then independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court erred in applying the substantive law to the facts of the case. Id.
 {¶ 11} Here, Howard argues that because he was stopped by officers outside of *Page 3 
their territorial jurisdiction, the detention was both illegal and violative of his Fourth Amendment rights. Thus, Howard argues, all evidence obtained from that stop should have been suppressed by the trial court. We agree.
 {¶ 12} R.C. 2935.03(A)(1) governs a police officer's jurisdiction to arrest. It is undisputed in this case that the officer who initially stopped and detained Howard was outside of his jurisdiction. When determining whether an extraterritorial stop triggers the exclusionary rule, a court must determine, under the totality of the circumstances, whether the statutory violation rises to the level of a constitutional violation, i.e., whether the police officer had reasonable suspicion to stop and sufficient probable cause to arrest appellant. State v.Weideman, 94 Ohio St.3d 501, 764 N.E.2d 997, 2002-Ohio-1484.
 {¶ 13} If the totality of the facts and circumstances demonstrate that police had a reasonable, articulable suspicion of criminal conduct sufficient to warrant the investigative stop and detention, and probable cause to arrest, then while that extraterritorial seizure may violate R.C. 2935.03, it does not rise to the level of a constitutional violation requiring suppression of all evidence derived from the stop. Id.
 {¶ 14} In Weideman, an officer who was a half mile out of his jurisdiction observed a vehicle traveling left of center, leave the road twice, and again travel left of center. The officer stopped the vehicle and requested assistance from the Ohio State Highway Patrol. The officer then observed that Weideman, the driver of the vehicle, had bloodshot eyes and smelled of alcohol. The officer detained Weideman who was subsequently arrested by a Highway Patrol officer for driving while under the influence of alcohol.
 {¶ 15} Weideman filed a motion to suppress, arguing that the officer who pulled him over conducted an illegal stop because he was outside his jurisdiction. The Ohio Supreme Court, citing R.C. 2935.03(A)(1), noted that the officer had in fact violated the statute in stopping Weideman's vehicle outside of his jurisdiction. However, employing the balancing test of Wyoming v. Houghton (1999), 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408, to determine whether a governmental action violates the reasonableness requirement of the Fourth Amendment, the Ohio Supreme Court concluded that:
 {¶ 16} "[t]he state's interest in protecting the public from a person who drives an automobile in a manner that endangers other drivers outweighs Weideman's right to drive *Page 4 
unhindered. These two factors demonstrate that [the officer's] violation of R.C. 2935.03 does not rise to the level of a constitutional violation." Id. at 506.
 {¶ 17} In State v. Fitzpatrick 152 Ohio App.3d 122, 786 N.E.2d 942,2003-Ohio-1405, the Sixth District came to the opposite conclusion where an officer outside his jurisdiction merely observed the defendant's vehicle "moving kind of slow." In that case, there was no testimony suggesting that the defendant's manner of driving presented a danger to other motorists. The officer had no reasonable suspicion of criminal activity on behalf of the defendant until after he had left his jurisdiction and discovered that defendant was in possession of illegal plates. Because this violation did not present an imminent safety danger to other motorists, the Sixth District could see no reason why the officer could not have alerted the police with jurisdictional authority to the general location of the vehicle so that they could make the stop. The court explained:
 {¶ 18} "We conclude that the government's interest in making an extraterritorial stop and arrest for a fourth-degree-misdemeanor violation is minimal and outweighed by the serious intrusion upon a person's liberty and privacy that necessarily arises out of a stop and arrest. Therefore, Officer Snow's action in making an extraterritorial stop of appellant's vehicle violates the reasonableness requirement of the Fourth Amendment. Officer Snow's statutory violation in this case does require suppression of all evidence flowing from the stop." Id. at 126, 786 N.E.2d 942.
 {¶ 19} Here, Howard claims that, since he was initially pulled over for his loud exhaust, the government's interest in making an extraterritorial stop was similarly outweighed by the intrusion upon his liberty and privacy. However, Howard ignores the fact that the stop was also based upon information that he was involved in drug trafficking, a felony of the second degree.
 {¶ 20} Arguably, the State has more of an interest in stopping and detaining someone trafficking in drugs than someone who has an expired license plate. However, the degree of the offense is not dispositive when weighing the State's interest against the serious intrusion upon a person's liberty and privacy that necessarily arises out of a stop and arrest. We note that in all of the cases where the extraterritorial stops were upheld, the most significant factor was the immediate need to pull the suspect over in order to *Page 5 
protect the safety of other motorists. Here, although we recognize the potential danger of allowing a drug trafficker to be free in society for a prolonged period of time, there was not the same immediate need for Howard to be pulled over at that very second as there was inWeideman. If the Bridgeport police had called officers with jurisdictional authority, then Howard still could have been stopped in time to thwart the suspected drug trafficking. Thus, as the Sixth District had in Fitzpatrick, we conclude the actions of the Bridgeport police to be unreasonable given the ease at which they could have called the Belmont County Sheriff. Accordingly, the trial court abused its discretion when overruling Howard's motion to suppress and his first assignment of error is meritorious.
 {¶ 21} As his second assignment of error, Howard claims:
 {¶ 22} "The Trial Court erred by allowing the co-defendant, John Mesko, to take the Fifth Amendment in response to every question as he would not have incriminated himself but could have identified the correct party to the drug transactions on February 28, 2005, denying the Defendant-appellant a proper defense."
 {¶ 23} Because of our disposition of Howard's first assignment of error, this assignment of error is deemed moot.
 {¶ 24} Accordingly, because Howard's two convictions were predicated upon evidence stemming from the unconstitutional stop and detention of Howard, the judgment of the trial court is vacated.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1