[Cite as *State v. Dillehay*, 2013-Ohio-327.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,             CASE NO. 17-12-07

    v.

MICHAEL P. DILLEHAY,           O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Sidney Municipal Court
Trial Court No. 2011TRC01000

**Judgment Affirmed**

**Date of Decision: February 4, 2013**

APPEARANCES:

    *Scott A. Kelly* **for Appellant**

    *Jeffrey L. Amick* **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Michael Dillehay, appeals the judgment of the Sidney Municipal Court convicting him of operation of a motor vehicle while under the influence of alcohol ("OVI") and driving in marked lanes. On appeal, Dillehay argues that the trial court erred in failing to suppress evidence obtained after police officers stopped his vehicle. Dillehay asserts the following grounds for reversal: (1) his extraterritorial detention was invalid; (2) the arresting officers failed to establish the necessary reasonable suspicion to extend the traffic stop for the purpose of performing sobriety testing; (3) the State failed to prove that probable cause supported Dillehay's arrest; and (4) the evidence of the portable breath test ("PBT") that the officers administered was unfairly prejudicial to Dillehay. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On April 18, 2011, Dillehay was cited for operation of a motor vehicle under the influence of R.C. 4511.19(A)(1)(a), (d), a misdemeanor of the first degree, and driving in marked lanes in violation of R.C. 4511.33, a minor misdemeanor. The citation arose from an encounter in the early morning hours of April 17, 2011 involving Dillehay, Officer Rodney Robbins of the Sidney Police Department, and Deputy Frank Bleigh of the Shelby County Sheriff's Office. Officer Robbins initially stopped Dillehay after observing him pull out of the parking lot at a local bar and driving erratically down State Route 47 and Sidney-

Freyburg Road. Approximately three to four minutes later, Deputy Bleigh arrived. The officers noticed that Dillehay had reduced motor skills, trouble with his balance, and a smell of alcoholic beverage on his breath. Further, Dillehay admitted to Deputy Bleigh that he had consumed at least one alcoholic beverage that evening. Based on these observations and Dillehay's admission, Deputy Bleigh administered sobriety tests and then arrested Dillehay for OVI.

{¶3} On May 26, 2011, Dillehay moved to suppress all evidence stemming from the traffic stop. The trial court conducted a hearing on Dillehay's motion on July 15, 2011. During the hearing, the following relevant evidence was adduced. Officer Robbins testified that he observed Dillehay drive his vehicle out of the parking lot at a local bar around 2:15 a.m. The bar is located in Shelby County, but is not within the city limits of Sidney. Officer Robbins indicated that he noticed the taillights of Dillehay's vehicle were not operational. As a result, he proceeded to follow Dillehay and to contact the Shelby County Sheriff regarding the offense. According to his testimony, Officer Robbins only followed Dillehay for "less than a couple of minutes" and over the course of "a couple miles." Tr., p. 10.

{¶4} The following exchange occurred regarding Officer Robbins' observations of Dillehay's driving:

> Q: And during that time that you followed [Dillehay], what did you observe about the operation of the vehicle?

A: I observed the vehicle * * * almost go off the roadway * * * .

* * *

Q: What did you observe about the operation of the vehicle?

A: That it was all over the road basically.

Q: For the whole two miles?

A: Not for the entire two miles, but you know, first I seen it go off the roadway on 47 and then when it turned onto Sidney-Freyburg Road, I seen it go left of center and almost into the other opposing lane.

Q: And when you saw it go off the – almost go off the roadway, what do you mean by that, how much – what percentage of the car and where at on the road?

A: I know the vehicle was at least straddling the center – part of the vehicle was in the other lane of travel.

* * *

Q: When it went off the roadway, did it go off to the right side or the left side?

A: The first time it would have been the right side of the roadway.

Q: And how far –

A: Toward the ditch.

Q: And how far off the road did it go?

A: That I'm not sure because I still had some distance between us. I seen it, maybe the tires were off – off the side of the road. I mean it didn't go into the ditch or anything like that. But the tires went off the right side of the roadway.

Q: Completely off the roadway?

A: I believe so.

Q: And when you observed it later, going into the centerline, how far over the centerline?

A: At least half of the vehicle was in the opposing lane of traffic.[1]
Tr., p. 10-12.

{¶5} Deputy Bleigh heard Officer Robbins' description of this erratic driving over the radio and suggested that Officer Robbins pull Dillehay's vehicle over. After doing so and approaching the vehicle, Officer Robbins noticed that Dillehay's "movement was very slow[]," tr., p. 16, and that he had trouble removing the license from his wallet. Upon Deputy Bleigh's arrival at the scene approximately three to four minutes later, Officer Robbins advised him of Dillehay's reduced motor skills and suggested that Deputy Bleigh look for indicators of intoxication.

{¶6} Deputy Bleigh then testified that upon his first contact with Dillehay, he "smell[ed] an odor of alcohol coming from inside the vehicle." Tr., p. 44. As a result, he requested that Dillehay step out of the vehicle. Deputy Bleigh stated that when he talked with Dillehay outside of the vehicle, he still smelled alcohol on Dillehay's breath. He also observed that Dillehay was "slow moving" and had

---

[1] We have reviewed Joint Exhibit 1, which is a video recording taken from Officer Robbins' cruiser. It confirms both that Dillehay's taillights were not operational and that his vehicle traveled into the opposing lane of traffic.

"some balance issues." Tr., p. 44. As a result, Deputy Bleigh requested that Dillehay undergo field sobriety testing, and Dillehay agreed. Deputy Bleigh testified that before commencing these tests, Dillehay admitted to having "some alcoholic beverages." Tr., p. 44. Once the field sobriety testing was complete, Deputy Bleigh arrested Dillehay for OVI.

{¶7} On cross examination, Deputy Bleigh acknowledged that he had not observed any of Dillehay's alleged traffic violations. He also discussed the performance of a horizontal gaze nystagmus ("HGN") test and that Dillehay showed all of the cues for intoxication. Deputy Bleigh also testified that he administered a PBT, but he did not indicate the results of that test.

{¶8} On August 15, 2011, the trial court granted Dillehay's motion in part and denied it in part. It suppressed evidence of the HGN test because the test was not conducted in accordance with National Highway Traffic Safety Administration standards. However, the trial court declined to suppress any other evidence from the traffic stop. On October 13, 2011, Dillehay changed his plea from not guilty to no contest and the matter proceeded to sentencing, and on November 29, 2011, the trial court sentenced Dillehay to 90 days in jail and Dillehay appealed. On January 12, 2012, we *sua sponte* dismissed Dillehay's appeal because the trial court's November 29, 2011 order was not final and appealable. On remand, the trial court issued a new order of sentencing that complied with our mandate.

{¶9} Dillehay filed this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE MUNICIPAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE FOR LACK OF JURISDICTION, AS THE STANDARD OF REASONABLE SUSPICION NECESSARY FOR EXTRATERRITORIAL DETENTION WAS NOT MET.**

*Assignment of Error No. II*

**THE MUNICIPAL COURT ERRED IN ENTERING JUDGMENT AGAINST APPELLANT AS THERE IS INSUFFICIENT EVIDENCE TO ESTABLISH REASONABLE SUSPICION OR PROBABLE CAUSE NECESSARY FOR SOBRIETY TESTING.**

{¶10} Due to the nature of the assignments of error, we elect to address them out of order.

*Assignment of Error No. II*

{¶11} In his second assignment of error, Dillehay contends that the trial court should have suppressed evidence of the sobriety testing performed after the traffic stop. He advances the following bases for his contention: (1) the State failed to establish the necessary reasonable suspicion for extending the duration of the traffic stop and administering sobriety tests; (2) the State failed to show the necessary probable cause for arresting Dillehay; (3) the results obtained from the PBT are inadmissible under the Rules of Evidence as unfairly prejudicial; and (4)

the evidence obtained after the traffic stop is "fruit of the poisonous tree." We disagree.

*Standard of Review for Motions to Suppress*

{¶12} "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson*, 137 Ohio App.3d 847, 850 (12th Dist. 2000) Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). The appellate court must then review the application of the law to the facts *de novo*. *Id.*, citing *Burnside*, 2003-Ohio-5372, at ¶ 8.

*Reasonable Suspicion for Extension of Traffic Stop's Duration*

{¶13} Both the United States Constitution and the Ohio Constitution prohibit the State from performing unreasonable searches and seizures. Fourth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 14. A traffic stop constitutes a seizure and implicates the protections of the Fourth Amendment. *State v. Johnson*, 3d Dist. No. 5-07-43, 2008-Ohio-1147, ¶ 16, citing

*Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391 (1979); *see also State v. Stephenson*, 3d Dist. No. 14-04-08, 2004-Ohio-5102, ¶ 16 ("Whenever a police officer accosts an individual and restricts his freedom of movement, that individual's Fourth Amendment rights become implicated."). Here, Dillehay concedes that the original traffic stop was constitutional.

{¶14} However, Dillehay does challenge the duration of the stop as beyond what is constitutionally permissible. In such a challenge, the reasonable suspicion standard applies. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, paragraph two of the syllabus; *State v. Cromes*, 3d Dist. No. 17-06-07, 2006-Ohio-6924, ¶ 36. The Supreme Court of Ohio has defined "reasonable articulable suspicion" as "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion [upon an individual's freedom of movement]." *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988), quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 80 S.Ct. 1868 (1968). The existence of such suspicion is not based on individual facts standing alone, but rather the totality of the circumstances. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 12; *Batchili* at paragraph two of the syllabus.

{¶15} In a challenge to the duration of a traffic stop, the State "must present facts that justify [the stop's] duration." *State v. Hollins*, 3d Dist. No. 5-10-41, 2011-Ohio-5588, ¶ 30. Generally, when investigating a minor traffic violation, a

police officer may only detain an individual "for the length of time necessary to check the driver's license, vehicle's registration, and the vehicle's license plate." *Id.*, citing *Batchili* at ¶ 12; *see also Cromes* at ¶ 35, quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319 (1983) ("It is established that once an officer lawfully stops an individual, the officer must carefully tailor the scope of the stop 'to its underlying justification.'"). Nonetheless, "[i]f, during the investigation of the events giving rise to the initial stop, the officer discovers additional facts from which it is reasonable to infer additional criminal activity[,] the officer is permitted to lengthen the duration of the stop to investigate such suspicions." *Hollins* at ¶ 31; *Cromes* at ¶ 36 ("An officer may * * * expand the scope of the stop and may continue to detain the individual without running afoul of [the Fourth Amendment] if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot.").

{¶16} Here, Officer Robbins observed Dillehay pull out of a bar at approximately 2:15 a.m. and then proceed to drive erratically. His first action after pulling Dillehay over for the traffic violations was to request Dillehay's license. In the course of making this request, Officer Robbins noticed that Dillehay had trouble getting the license out of his wallet and other reduced motor skills. Once Deputy Bleigh arrived at the scene of the traffic stop, Officer Robbins reported his observations to Deputy Bleigh, who then talked to Dillehay. Deputy

Bleigh smelled the odor of an alcoholic beverage, noticed the same reduced motor skills as Officer Robbins, and learned that Dillehay had been drinking. In light of these facts, we find that both Officer Robbins and Deputy Bleigh had a reasonable suspicion that Dillehay was under the influence while he was operating his vehicle. *See State v. Henderson*, 51 Ohio St.3d 54, 57 (1999) (finding that police officers can rely on statements from other law enforcement officials when formulating probable cause). Accordingly, it was constitutionally permissible for them to extend the duration of the traffic stop to perform the field sobriety tests and to investigate the criminal activity they suspected.

{¶17} Dillehay relies on *State v. Flowers*, 7th Dist. No. 07-MA-68, 2007-Ohio-6920, and *State v. Gustin*, 87 Ohio App.3d 859 (12th Dist. 1993), to support his proposition that findings of reasonable suspicion require facts that are "more grievous * * * than the brief venture onto the line allegedly committed * * * here." Appellant's Br., p. 8. However, as noted above, the trial court's finding of reasonable suspicion was not solely based on Dillehay's erratic driving. Rather, the finding was based on a variety of circumstances. Thus, we are unable to find any persuasive guidance from *Flowers* and *Gustin* in this matter.

{¶18} Based on our review of the record, we find that the trial court appropriately found that Officer Robbins and Deputy Bleigh had the requisite

reasonable suspicion to extend the duration of the traffic stop to administer field sobriety tests.

*Probable Cause for Arrest*

**{¶19}** A warrantless arrest is unconstitutional unless the arresting officer had probable cause to make the arrest. *State v. Timson*, 38 Ohio St.2d 122, 127 (1974). "In determining whether the police had probable cause to arrest an individual for [OVI], we must consider whether, at the moment of arrest, the police had information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Thompson*, 3d Dist. Nos. 14-04-34 & 14-04-35, 2005-Ohio-2053, ¶ 18, citing *State v. Homan*, 89 Ohio St.3d 421 (2000), superseded by statute on other grounds as stated in *State v. Bozcar*, 113 Ohio St.3d 148, 2007-Ohio-1251. The existence of probable cause is based on the totality of the circumstances. *Cromes*, 2006-Ohio-6924, at ¶ 38, citing *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744 (2002).

**{¶20}** We find this matter to be similar to the facts present in *State v. Jividen*, 3d Dist. No. 9-05-29, 2006-Ohio-2782. There, the defendant was pulled over around 2:30 a.m. and he proceeded to admit to the arresting officer that he had just left a local bar and that he had been drinking. The arresting officer testified to smelling the odor of alcohol on the defendant's breath, observing that

his eyes were "red and glassy," and noticing signs of impairment throughout the administration of field sobriety tests. *Id*. at ¶ 17. As a result of these circumstances, we affirmed the trial court's finding of probable cause. *Id*. at ¶ 18-20.

**{¶21}** Here, Officer Robbins' testimony indicates that he observed Dillehay pull his vehicle out of the parking lot at a local bar around 2:15 a.m. and then proceed to erratically drive over marked lanes. Officer Robbins also noticed that Dillehay had reduced motor skills when he first made contact and requested Dillehay's license. Meanwhile, Deputy Bleigh's testimony indicates that he smelled the odor of alcohol on Dillehay's breath and that Dillehay admitted to drinking that evening. He further stated that he observed Dillehay to have balance issues and to have reduced motor skills. As in *Jividen*, these circumstances are sufficient to establish that Deputy Bleigh had the requisite probable cause to arrest Dillehay.

**{¶22}** To support his position, Dillehay analogizes to *State v. Brown*, 166 Ohio App.3d 638, 2006-Ohio-1172 (11th Dist.), and *State v. Beagle*, 2d Dist. No. 2002-CA-59, 2003-Ohio-4331. But, a review of *Brown* and *Beagle* reveals that they are easily distinguishable from the facts presented in this matter. In *Brown*, the defendant did not tell the officers before his arrest that he had been drinking. There was also no indication that the defendant drove erratically or had balance

issues. *Brown* at ¶ 29. As a result, the Eleventh District found that the trial court improperly found the existence of probable cause. *Id*. at ¶ 30. The *Beagle* court similarly reversed the trial court's finding of probable cause where the police did not observe the defendant have balance issues or have problems removing his license from his wallet. *Beagle* at ¶ 29. Conversely, here, Dillehay admitted to drinking, engaged in erratic driving, and demonstrated balance issues. In light of such manifest differences, we decline to follow *Brown*'s and *Beagle*'s guidance.

*Evidence of PBT*

**{¶23}** Before turning to the merits of Dillehay's argument to exclude evidence of the PBT, we initially note that there are several deficiencies with Dillehay's argument regarding the PBT. First, the trial court's ruling on the motion to suppress states that "[b]y agreement of the parties, [the] branch * * * of the motion regarding the breath test was not part of this motion." (Docket No. 39, p. 1). This indicates that the trial court did not take the PBT evidence into consideration when ruling on the motion to suppress. It also results in a waiver on Dillehay's part of all but plain error.

**{¶24}** Second, Dillehay, and not the State, was the party who brought the PBT to the attention of the trial court during the suppression hearing. We also note that Dillehay merely presented evidence that the PBT was performed. There was no evidence of the results of the test.

**{¶25}** Third, Dillehay improperly cites to Fed.R.Evid. 403 as support for his position. The Federal Rules of Evidence have no applicability in Ohio municipal courts. Rather, the Ohio Rules of Evidence control. *See* Evid.R. 101(A) ("These rules govern proceedings in the courts of this state * * *."). Further, the Ohio Rules of Evidence, except for those surrounding privileges, do not apply when a trial court conducts a suppression hearing. *See* Evid.R. 101(C)(1) ("These rules * * * do not apply in * * * [d]eterminations prerequisite to rulings on the admissibility of evidence * * * ."); *State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, ¶ 14 ("[J]udicial officers at suppression hearings may rely on hearsay and other evidence even though that evidence would not be admissible at trial."); *see also* Evid.R. 104(A) ("In making its determination [the trial court] is not bound by the rules of evidence except those with respect to privileges."). As a result, we find that the Ohio Rules of Evidence do not control our disposition of this matter.[2]

**{¶26}** However, we find that our decision in *Jividen* controls our review here. There, the State offered evidence of the defendant's PBT results during the

---

[2] Dillehay cites several cases in which courts have found that PBT results are inadmissible under Evid.R. 403. However, these cases are all distinguishable in that none of them involve the admissibility of PBT results during suppression hearings regarding law enforcement's probable cause to arrest OVI defendants. Rather, all of the cases involved the admissibility of PBT results *at trial*. *See State v. Shuler*, 168 Ohio App.3d 183, 2006-Ohio-4336, ¶ 1 (4th Dist.) (affirming denial of pre-trial motion to allow evidence of PBT results at trial); *State v. Kerns*, 3d Dist. No. 15-97-8 (Mar. 30, 1998) (reversing admission of testimony regarding PBT results at trial); *State v. Siebenaller*, 6th Dist. No. 93WD056 (May 13, 1994) (same); *City of Elyria v. Hebebrand*, 85 Ohio App.3d 141, 143-44 (9th Dist. 1993) (same).

suppression hearing. We affirmed the trial court's finding of probable cause because "we believe[d] the facts and circumstances *before* [the officer] administered the PBT support a finding of probable cause to arrest." *Jividen*, 2006-Ohio-2782, at ¶ 18. Here, Officer Robbins' and Deputy Bleigh's observations before the administration of the PBT, as noted above, are sufficient, by themselves, to establish probable cause. As a result, under *Jividen*, any consideration of the PBT results by the trial court was not prejudicial to Dillehay.

*Fruit of the Poisonous Tree*

{¶27} Since we find that there was reasonable suspicion for the traffic stop and probable cause for Dillehay's arrest, we likewise find that the fruit of the poisonous tree doctrine has no applicability in this matter. *See City of Kettering v. Hollen*, 64 Ohio St.2d 232, 235 (1980) (finding that the fruit of the poisonous tree doctrine does not apply where the court finds that there is no Fourth Amendment violation). Consequently, the trial court did not err in denying the motion to suppress under this doctrine.

{¶28} In sum, a review of the record reveals that Officer Robbins and Deputy Bleigh had the requisite reasonable suspicion to extend the duration of the traffic stop, that the State established the existence of probable cause for arresting Dillehay, and that the evidence of PBT was not prejudicial to Dillehay. Due to

these findings, we also find that any evidence of intoxication from the traffic stop is not excludable as fruit of the poisonous tree.

{¶29} Accordingly, we overrule Dillehay's second assignment of error.

*Assignment of Error No. I*

{¶30} In his first assignment of error, Dillehay argues that the trial court should have granted his motion to suppress because Officer Robbins, as a member of the Sidney Municipal Police Department, had no jurisdiction to effectuate the traffic stop outside the city limits of Sidney. We disagree.

{¶31} Dillehay's argument is predicated on the premise that Officer Robbins' traffic stop violated R.C. 2935.03, which he contends is a proper basis for suppression of any evidence flowing from the traffic stop. Dillehay correctly indicates that R.C. 2935.03(A)(1) only empowers police officers to arrest individuals "within the limits of the political subdivision in which [they are] * * * employed" and that Officer Robbins effectuated the traffic stop outside of the Sidney city limits. But, a review of relevant case law reveals that even if Officer Robbins' traffic stop violated R.C. 2935.03,[3] the trial court was not empowered to grant suppression as the remedy for such a violation.

{¶32} In *State v. Weideman*, 94 Ohio St.3d 501 (2002), the Supreme Court of Ohio handed down the following:

---

[3] We note that Officer Robbins observed some of Dillehay's erratic driving while they were within the city limits of Sidney.

> Where a law enforcement officer, acting outside of the officer's statutory territorial jurisdiction, stops and detains a motorist for an offense committed and observed outside the officer's jurisdiction, the seizure of the motorist by the officer is not unreasonable *per se* under the Fourth Amendment. Therefore, the officer's statutory violation does not require suppression of all evidence flowing from the stop. *Id.* at syllabus.

Although the court found that suppression was inappropriate under the facts of the case, the language of its holding left open the possibility "that a court could find an extraterritorial stop [was] unreasonable based on the unique facts and circumstances of a particular case." *State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, ¶ 14.

{¶33} However, this possibility was foreclosed by the United States Supreme Court's decision in *Virginia v. Moore*, 553 U.S. 164, 128 S.Ct. 1598 (2008). The Court unequivocally stated that "when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." *Id.* at 171. Consequently, the Court found that state courts were not required to employ the exclusionary rule to suppress evidence obtained in contravention of a state statute. *Id.* at 174-75. In accordance with *Moore*, the Supreme Court of Ohio has refined the finding in *Weideman* and held that where a police officer effectuates a traffic stop based on probable cause, suppression of

evidence from the stop is inappropriate, even if the stop violated R.C. 2935.03. *Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, at syllabus and ¶ 23.

**{¶34}** Here, as discussed above, Officer Robbins had probable cause to stop Dillehay's vehicle for the violation of traffic laws. Under *Jones*, the fact that Officer Robbins was outside the territorial limits of Sidney at the time of the stop is immaterial to the constitutionality of the resulting search and seizure. The trial court could not suppress the evidence obtained after the stop on the basis that Officer Robbins may have violated R.C. 2935.03. As a result, we can find no error in the trial court's denial of Dillehay's motion to suppress.

**{¶35}** Dillehay argues that we should apply a balancing test of governmental interests and individual rights to find that the balance supports the granting of suppression. In support, Dillehay cites to *State v. Howard*, 7th Dist. No. 06 BE 1, 2007-Ohio-1237, and *State v. Fitzpatrick*, 152 Ohio App.3d 122, 2003-Ohio-1405 (6th Dist.). These cases from the Sixth and Seventh Districts predate *Jones*, which explicitly rejects the application of a balancing test when remedying a violation of R.C. 2935.03. *Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, at ¶ 22 ("[W]e must reject appellees' entreaties that we develop a balancing test for determining when to impose a suitable sanction for a law-enforcement officer's violation of [R.C. 2935.03]."). Pursuant to *Jones*' guidance, we must

reject applying *Howard* and *Fitzpatrick* in this matter and find Dillehay's argument unavailing.

{¶36} Accordingly, we overrule Dillehay's first assignment of error.

{¶37} Having found no error prejudicial to Dillehay, in the particulars assigned and argued, we affirm the trial court's judgment.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**